| .MOORE, J.
Tyrone Harris was indicted on two counts of arson where the damage amounted to $500 or more, La. R.S. 14:52 B. He proceeded to trial in which the jury found him guilty as charged on count one but not guilty on count two. The district court then sentenced him to eight years at hard labor with all but three years suspended, followed by five years’ supervised probation. Harris now appeals, urging that the court imposed an excessive sentence by relying on allegations of prior acts of arson that were not proved at the instant trial or any other trial. For the reasons expressed, we affirm.

Procedural Background

The indictment charged that on February 12, 1999, Harris intentionally set fire to the property of Peggy Wright on Cherry Street in Arcadia; 12 days later, he intentionally set fire to the same victim’s property on Second Street. Shortly before trial, the state amended the indictment to allege that the damage exceeded $500 in both incidents.
Harris did not designate the transcript of the jury trial, which took place on October 18 and 19, 2004, as part of the appellate record. At the sentencing, however, the court recounted the state’s case as showing that Harris and Ms. Wright were *363 going through a divorce in early 1999 and Harris had to vacate her house on Cherry Street. On February 12, someone called 911 to report a fire there. A police officer only two blocks away responded almost immediately, finding a fully-dressed black man walking out the back door, carrying two garbage bags loaded with what appeared to be clothing. The officer described him as “cool, collected,” and identified him as Harris. The State Fire Marshal’s office confirmed that the fire was |2incendiary, as someone had poured flammable fluid on the floor and lit it. Ms. Wright testified that after receiving insurance proceeds, she still sustained uninsured losses of $16,443.36 from this fire.
Twelve days later, another building owned by Ms. Wright, located on Second Street and used as a boutique and flea market, also burned down. The fire marshal found this was of the same incendiary origin, flammable liquid poured on the floor and ignited intentionally. A witness testified that someone “resembling” Harris was standing across the street while firemen battled this blaze, but he could not positively identify him.
As noted, a 12-member jury found Harris guilty as charged on count one and not guilty on count two.
At the sentencing hearing, Harris stated he was “real sorry that it got to this point” and asked for the court’s mercy, but admitted he had not reimbursed Ms. Wright for any of her losses. Defense counsel argued that Harris was a first-felony offender, a businessman and the main source of support for his elderly, disabled parents. The court acknowledged some 25 letters from pastors and local officials all over north Louisiana, asking for leniency. Ms. Wright read a letter to the court, asking for “appropriate punishment.” She cited his “deceitfulness, reckless disregard for the safety of others and lack of remorse,” and concluded, “Mr. Harris’s decision to burn down my home was a well-thought, calculated act of malice to hurt me in an act of retribution for a failed marriage.”
The court stated that it took into account several incidents listed in the PSI. In 1980, Harris’s car caught fire in Ruston; he received insurance 1 proceeds for his loss. In Los Angeles, California, while married to his first wife, he reported a house fire which he ascribed to neighborhood children shooting rocket launchers which landed on his roof; the neighbor’s insurer paid for the loss and no criminal charges ensued. In 1990, while married to his second wife, Harris’s house in Jackson Parish burned to the ground; the insurer determined this fire was incendiary and refused to pay; Harris filed suit and lost, but no criminal charges were filed. The court also stated, at least three times, that despite the verdict the court was convinced that Harris set fire to Ms. Wright’s boutique on February 24.
The court also recited the sentencing guidelines of La. C. Cr. P. art. 894.1 B item by item, noting the impact of this crime on Ms. Wright, her family and the community. The court then sentenced Harris to eight years at hard labor, with all but three years suspended and five years’ supervised probation. Conditions of probation included paying a fine of $5,000, court costs, and restitution to Ms. Wright of $16,443.36.
Harris filed a motion for reconsideration, urging his first-felony status and that the court “relied on conclusions not judicially determined such as previous fires involving property owned or occupied by defendant.” The court denied this without a hearing.

Discussion

By one assignment of error, Harris urges the court erred in utilizing “unprov *364 en facts of other acts of unproven conduct” in fixing a sentence of eight years at hard labor, all but three suspended with five years’ probation. He concedes he was involved in at least three fires before 1990, but | contends the court “apparently assumed he was somehow responsible for some or all” of them, despite the fact that “no jury had ever found beyond a reasonable doubt that Harris had any involvement in starting those fires.” He argues that a sentence violates the sixth amendment if the facts used to support it are neither admitted by the defendant nor found by a jury. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He also argues that unproved facts cannot be used as a basis for sentencing. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Finally, he asserts that a judge’s findings at a sentencing hearing, if supported only by a preponderance of the evidence, are not sufficient to support a sentence. In support, he cites United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
The state responds that evidence of pri- or alleged offenses is relevant to the lower court’s determination of an appropriate sentence. State v. Pierson, 296 So.2d 324 (La.1974);[1] State v. Tully, 430 So.2d 124 (La.App. 2 Cir.), writ denied, 435 So.2d 438 (La.1983); State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, writ denied, 2002-2519 (La.6/27/03), 847 So.2d 1254. The state submits that the court fully complied with the sentencing guidelines of Art. 894.1 and did not abuse its discretion in imposing this mid-range sentence.
| ¡¡Harris's invocation of Blakely and Ap-prendi, supra, lacks merit. This court recently rejected the same argument in State v. Burford, 39,610 (La.App. 2 Cir. 5/11/05), 902 So.2d 1190. After thoroughly outlining the holdings of those cases, we concluded:
Blakely does not apply in this case. The court relied on a presentence investigation pursuant to La. C. Cr. P. art. 875 to aid in sentencing. The defendant’s arguments are patently inapplicable in this case since Blakely v. Washington, supra, only applies where the trial court uses facts outside the guilty plea to increase a defendant’s sentence beyond the statutory maximum in the offense submitted to a jury. In the present case, Gretchen Burford pled guilty to attempted second degree robbery that carried a statutory maximum sentence of 49$ years. Her 30-year sentence was 19 years under the statutory maximum that would have been considered by a jury for that offense. 902 So.2d at 1199 (citations omitted).
Harris’s reliance on United States v. Booker, supra, is also unavailing. That case also requires proof of facts reflected in the jury verdict or admitted by the defendant if those facts are used to enhance a sentence beyond the range pre *365 scribed by the Federal Sentencing Guidelines. The instant case obviously did not involve the Federal Sentencing Guidelines and did not result in a sentence greater than the statutory maximum.
Appellate review of a sentence for excessiveness is two-pronged. First, the record must show the sentencing court took cognizance of the criteria set forth in Art. 894.1. As noted, the district court recited the entire list of these criteria, noting which weighed against Harris. The court’s compliance with the article was exemplary.
[¿The second prong is constitutional excessiveness. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, supra; State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Hogan, 480 So.2d 288 (La.1985).
The sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); State v. Myles, 94-217 (La.6/3/94), 638 So.2d 218. Because the scope of information available to the sentencing court is so broad, the defendant has a due process right to rebut prejudicially false or misleading information that may affect the sentencing determination. State v. Myles, supra. The defendant also has the due process right to sentencing free of assumptions about his prior record that are materially untrue. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); State v. Myles, supra. The defendant is therefore entitled to traverse the contents of the PSI. La. C. Cr. P. art. 877 B; State v. Myles, supra.
At the sentencing hearing, the court stated that the PSI had been provided to defense counsel “on the request of the court.” Counsel did not object to any of its contents. Ás a result, Harris cannot now complain that the district court erred in relying on this information. State v. Myles, supra; State v. Williams, 96-37 (La.App. 3 Cir. 6/26/96), 677 So.2d 692.
It is, of course, a matter of some concern that the district court constantly adverted to the arson of the boutique on Second Street, a crime of which the jury acquitted Harris. However, the court properly noted Ms. Wright’s major economic loss arising from the fire on Cherry Street, the risk of property damage to nearby houses, the physical peril to the firemen, as well as the string of suspicious fires trailing Harris from Louisiana to California and back. As the supreme court noted in State v. Myles, supra:
We find that the possibility the trial judge may have sentenced relator at least in part on the basis of arrest that led to an acquittal after trial, and thereby considered information which had no bearing on relator’s potential for rehabilitation, is too remote to justify setting aside a sentence otherwise fully supported by the record.
638 So.2d at 219.
The same rationale applies here. Convicted of one count of arson in which the damage amounted to $500 or more, Harris faced a sentencing range of two to 15 years at hard labor. La. R.S. 14:52 B. The sentence of eight years at hard labor, with *366 all but three years suspended and five years’ supervised probation, is in the mid-range and not excessive in light of the circumstances of the offense, damage inflicted, and Harris’s history. We find no abuse of discretion.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). Tyrone Harris’s conviction and sentence are therefore affirmed.
AFFIRMED.

. The state also cites State v. Pierson and State v. Polk, 258 La. 738, 247 So.2d 853 (1971), for the proposition that "a sentence imposed by a trial judge that is within statutory limits is generally not subject to review on appeal.” This principle was later abrogated by the court in State v. Sepulvado, 367 So.2d 762 (La.1979), holding that "the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.” The supreme court has repeatedly upheld the rule of appellate review of sentences, most recently in State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. Counsel for the state is advised to review Rule 3.3(a)(2), Rules of Professional Conduct, and in the future to avoid citing jurisprudence that announces obsolete or abrogated legal theories.